Potter, J.
(concurring). The defendant is charged with possession of a narcotice drug under section 1751-a of the Penal Law and section 3305 of the Public Health Law. He moves to suppress the evidence thereof upon the ground that the contraband was the subject of an illegal search and seizure in violation of the Fourth Amendment of the United States Constitution, made applicable to State prosecutions by means of the due process clause of the Fourteenth Amendment of the said *858 Constitution (Mapp v. Ohio, 367 U. S. 643; People v. Loria, 10 NY 2d 368).
The basic facts are these:
The defendant is a patrolman on the New York City police force. As such, police regulations require him, when on duty, to carry a memorandum pad enclosed in a leather binder. The pad is furnished gratis to him by the Police Department: The binder of a type prescribed by the department is bought by him. The defendant in obedience to the regulations carried pad and binder. Regulations further required the defendant, while on duty, to make certain official entries in the said memorandum book. (See Police Dept. Rules and Procedures, ch. 3 [27.0 and 27.1]).
A female informer gave information to the department that the defendant had offered to sell narcotic drugs to her. These drugs he allegedly kept in the pouch attached to one of the inner sides of the binder enclosing the memorandum pad. A lieutenant and sergeant attached to the First Deputy Police Commissioner’s office were assigned to investigate the “ tip.” On the morning of December 5, 1961 they appeared at the precinct stationhouse where the defendant had reported for duty. Before the defendant started on his tour of duty, the lieutenant approached him and requested to see his memorandum book. The latter complied, handing to the lieutenant the memorandum pad inserted in its binder. An examination of the pouch forming part of the binder produced three glassine enevelopes purportedly containing the narcotic drug.
Although the departmental regulations expressly require that the memorandum pad shall be inserted in the leather binder, thereby making pad and binder companion items, nevertheless, the defendant asserts that under these regulations only the pad is subject to inspection by his superior officers, and not the binder. As support for this contention, the defendant, during the hearing to suppress, obtained the admission from the lieutenant who searched the binder, that although he had made a great many inspections of memorandum books during his career, yet never prior to the instance at issue, had he examined a binder enclosing a memorandum pad. Moreover, he frankly admitted that he was looking for the contraband. Consequently, the defendant maintains that the lieutenant’s action amounted to an unlawful search and seizure in defiance of the Fourth Amendment of the Federal Constitution, securing persons, houses, papers and effects against unreasonable searches and seizures.
*859 It is true that, generally, no unrestrained, indiscriminate search for evidence is reasonable (Gouled v. United States, 255 U. S. 298, 306). Nor is an illegal seizure validated by what is seized (United States v. Di Re, 332 U. S. 581, 595; Byars v. United States, 273 U. S. 28, 29). However, consent constitutes a waiver of the rights secured by the Fourth Amendment (People v. Loria, 10 N Y 2d 368, 373; United States v. Shules, 65 F. 2d 780, 781; United States v. MacLeod, 207 F. 2d 853, 855; United States v. Dornblut, 261 F. 2d 949, 951, cert, denied 360 U. 3. 912; United States v. Sclafani, 265 F. 2d 408, 414-415, cert, denied 360 U. S. 918; United States v. Burgos, 269 F. 2d 763, cert, denied 362 U. S. 942; United States v. Martin, 176 F. Supp. 262, 266).
Thus, the cardinal question is: Had the defendant, then on duty, by obeying the order of a superior officer to produce the former’s memorandum book, i.e., pad and binder, consented to the ensuing search and seizure? The question is one of first impression. If the defendant had not consented, then the evidence must be suppressed. If he had consented, then the contraband may be used against him.
The Rules and Procedures of the Police Department provide that a member thereof shall promptly obey all lawful orders and instructions issued by a superior officer or by a higher authority within the department (ch. 2 [2.0].) In essence, the defendant concedes that it was a lawful order to direct bim to produce his memorandum pad for inspection; but that it would not have been a lawful order to require him to submit for examination, the binder covering such pad. In fine, the defendant admits that he consented to the inspection of the pad, but not of the binder.
To sustain the defendant’s position, one must, perforce, hold that memorandum pad and binder together do not constitute one article of equipment, but that each must be treated as an item separate and apart from the other. Two regulations of the department point to the contrary. First, the memorandum pad must be inserted in a leather binder (Rules and Procedures, ch. 3 [27.0]); and second, all members of the force must have their rank and shield number stamped on their memorandum book covers by the Firearms Unit of the Police Academy (ch. 25 [1.1]. The clear inference to be drawn from these regulations is that the department regards pad and binder as a unit of equipment.
Even had the defendant never taken the requisite oath of fidelity (Administrative Code of City of New York, § 434a-9.0, subd. b) yet by the very nature of his calling as a peace officer, *860 he had necessarily placed himself under the rules, procedures and disciplines of the department. These canons of conduct form a standard to determine his trustworthiness as a police officer. To test such trustworthiness, his superiors were duty-bound to make inquiry, from time to time, as to the manner in which he conducted himself. Order and discipline demanded nothing less. In choosing to become a police officer, the defendant necessarily elected to submit to such occasional inquiry; for perforce, such supervision was part of the terms of his employment, and a basic condition thereof. (McAuliffe v. New Bedford, 155 Mass. 216, 220, opinion by Oliver Wendell Holmes, J.). Certainly, it was not his office or province to set the rules of his own conduct as a member of the force. Consequently, if during the course of an inspection by his superiors, it developed that he had committed a crime, it would seem beyond all cavil that the discovery of any evidence to that effect would be directly connected with the question of his trustworthiness. And since his trustworthiness is a subject always open to inquiry by his superiors, then as to such inquiry, the defendant’s consent thereto, so long as he chose to be a police officer, must be a standing and continuing one. This is so because the members of the Police Department constitute “ an armed, disciplined, and quasi-military force maintaining protection of life, person, liberty, property, and organized government itself ” (Butler v. Monaghan, 200 Misc. 327, 329; New York City Charter, § 435).
Although no case directly in point has been found, yet Bratcher v. United States (149 F. 2d 742, cert, denied 325 U. S. 885) bears some analogy to the case at bar. There the defendant was ordered to report for induction into the armed forces, and thereupon underwent a physical examination resulting in the discovery that he had taken a drug to cause his rejection for service. The defendant in Bratcher essentially maintained that by being ordered to undergo physical tests leading to the disclosure that he had taken such a drug, his person had been subjected to an unlawful search and seizure. The court brushed such contention aside. So in the instant case, the official equipment in question being a proper subject for departmental inspection, any contraband found in such equipment and thereupon seized as an incident of such inspection became the licit fruit of such search and seizure. To hold otherwise would be to fall into the defendant’s error, i.e., that as to one part of the equipment, namely, the memorandum pad, he is to be held accountable as a police officer; and that as to the other part thereof — the binder — he is to be regarded purely as a civilian, thereby freeing it from departmental inspection. To accept *861 this line of reasoning is to end in a sophistic conclusion. In arriving at this view, I have been fully mindful of the rule that “ ‘ courts indulge every reasonable presumption against waiver’ of fundamental constitutional rights ” (Johnson v. Zerbst, 304 U. S. 458, 464; Ætna Ins. Co. v. Kennedy, 301 U. S. 389, 393).
The defendant’s motion to suppress the three glassine envelopes and their contents should be denied in all respects. Bohan and Potter, JJ., concur.
Motion to suppress evidence denied.