## TITLE GUARANTEE & TRUST CO. v. UNITED STATES.

### No. 6368.

Circuit Court of Appeals, Ninth Circuit.

June 1, 1931.

Rollin L. McNitt and John A. Cronin, both of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Harry Graham Balter, Assst. U. S. Atty., both of Los Angeles, Cal.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

Appeal in an abatement case under the National Prohibition Act, attacking a decree of the District Court closing the premises for the period of one year.

The facts are undisputed. From the agreed statement presented under Equity Rule 77 (28 USCA § 723), it appears that the premises sought to be enjoined were used as a restaurant known as Tony's Café, and operated by the respondent Tony Panzich at 901–905 East First street, Los Angeles, Cal., that the respondents John Arkovich, Otto Meyers, and George Gerch were employees of said Tony Panzich at said café, and that the respondent and appellant, Title Guarantee & Trust Company, a corporation, was the owner of the real property and building upon and in which the café was situated, as trustee under a deed of trust.

It is admitted that liquor was sold in violation of law on said premises on six specific dates; that on numerous other dates the proprietor of said premises kept, bartered, and sold on said premises for beverage purposes different quantities of intoxicating liquors, and that the said respondents and their employees in the regular course of their unlawful business solicit, take, and accept or-

ders for the sale of intoxicating liquors for beverage purposes as defined in the National Prohibition Act (title 2, § 1 [27 USCA § 4]); that the said Tony Panzich has been convicted in the federal court at Los Angeles, Cal., on one occasion prior to the time the above premises were rented by the Title Guarantee & Trust Company to said Tony Panzich, for violation of the National Prohibition Act at the said premises; that the reputation of said premises is that of a place where intoxicating liquors are sold in the regular course of business; that the Title Guarantee & Trust Company, a corporation, respondent and appellant herein, after being fully advised of the unlawful use to which said premises were being put, delayed unreasonably to take action to prevent the continuance and repetition of said unlawful acts.

The facts set out in the opinion of the learned trial judge are also admitted as true and made a part of the agreed statement. Quoting from the opinion:

"At the trial it was agreed on the part of the defendants, including Title Guarantee and Trust Company, trustee owner, that witnesses present and which the Government intended to call, would testify to the facts as they were alleged in the bill of complaint. In the bill a series of violations of the National Prohibition Act were set forth. In addition thereto the Government offered evidence showing that a few days before the trial there had been further sales of liquor made at the place designated. This place was used by the defendant Tony Panzich as a cafe or restaurant. It appears from the evidence that for a considerable time the place has been known among police officers having to do with investigations of prohibition violations as one where both beer and whisky could be readily obtained. There is no question made, as opposed to the Government's showing, but that Panzich openly and continuously sold liquor in violation of law. The Government has asked that the place be closed for a period of one year, as the prohibition act provides may be done. The Title Guarantee and Trust Company, which, as trustee, represents the ownership interest, has urged that there is no occasion for closing the place, because the tenant had closed his doors and was about to move from the premises. It seems that he did not close until a raid was made by the officers a few days before the trial, at the time the latest violations were detected.

"As to whether it is probable that the owner may permit violations in the future should be judged by its conduct in the past. The owner was notified in January, 1929, by the district attorney of Los Angeles county, that unlawful acts in violation of the state prohibition law were being committed on the premises. It was later given the names of police officers who would be available as witnesses to substantiate the charge. No action was taken by it until May 3, 1929, when it commenced an unlawful detainer proceeding to terminate the lease as against the tenant Panzich. This case was continued on stipulation and orders, and final judgment was not entered until February 7, 1930. Meanwhile, although an unlawful detainer action under the state law is a summary proceeding, capable of being quickly brought to a close, and during which time the lessor relies upon a right to damages rather than the collection of rental, the lessor continued to collect rent under a conditional stipulation made with the tenant, covering the whole period of time up to the date when it secured judgment, or approximately that date. * * *

"All of these matters considered, it seems that a decree closing the premises for a period of one year, as section 22 of title 2 of the National Prohibition Act (27 USCA § 34) provides, will be neither harsh nor inequitable."

In view of the contention of appellant, which will hereafter be noted, we have thought it proper to quote at some length the facts as agreed to.

The court made its decree in part as follows:

"And it being by the court determined that the Title Guarantee and Trust Company, a corporation, after being fully advised of the unlawful use to which said premises were being put, as in the complaint herein charged, delayed unreasonably to take action to prevent the continuance and repetition of the said unlawful acts, as more particularly set forth in the written opinion filed herein, and that such owner is likely to continue to be negligent in the manner aforesaid, if the possession of the premises is returned to the said Title Guarantee and Trust Company, a corporation, and said premises are permitted to be used as a restaurant or a place where food and beverages are dispensed.

"It is hereby ordered and decreed that said premises shall be closed for the period of one year.

"The option, however, is given to said Title Guarantee and Trust Company, if it

consents to be bound by the restriction now stated, to have the possession of said premises returned to it upon giving bond in the sum of one thousand dollars ($1,000), as provided in the National Prohibition Act of October 28, 1919, to the effect that any tenant or lessee to whom the said respondent, Title Guarantee and Trust Company, may rent the said premises within the year next succeeding the date of this decree, shall not violate the provisions of the National Prohibition Act or of any other state or federal law relating to intoxicating liquors, such premises may be reopened and used for the purpose of a legitimate business, not including that of a restaurant, cafe or any business where food, drinks or beverages of any kind are sold or dispensed.

"That upon the furnishing of said bond, which shall contain the provisions above mentioned, the closure sign heretofore ordered to be placed on said premises may be removed."

"Appellant does not question the evidence," quoting from its brief, "or the sufficiency thereof to support the decision made and entered." It is the portion of the decree giving appellant an option to open the premises under bond which is objected to; the contention being that the court, having exercised its discretion and allowed the posting of the bond to reopen the premises, had no authority to impose the additional condition and restriction that the premises should be used for a legitimate business, not including that of a restaurant, café, or any business where food or drinks or beverages of any kind are sold or dispensed.

Section 22 of title 2 of the National Prohibition Act, title 27, USCA, upon which the decree was based, provides that, upon judgment ordering the nuisance to be abated, the court may order that the premises shall not be occupied or used for one year thereafter; "but the court may, in its discretion, permit it to be occupied or used if the owner, lessee, tenant, or occupant thereof shall give bond" as provided "and conditioned that intoxicating liquor will not thereafter be manufactured, sold, bartered, kept, or otherwise disposed of therein or thereon, and that he will pay all fines, costs, and damages that may be assessed for any violation of this chapter upon said property."

Appellant relies upon Crocker First Federal Trust Co. v. U. S. (C. C. A.) 38 F.(2d) 545; U. S. v. Pepe (C. C. A.) 12 F.(2d) 985, and Schlieder v. U. S. (C. C. A.) 11 F. (2d) 345, 348.

The Pepe Case was cited by this court in the Crocker Case. In neither of these cases was there an admission and finding that the owner of the premises was at fault. We think both cases are distinguishable, but, because of the conclusion we have reached herein, it is unnecessary to discuss them. In the Schlieder Case the following apt language, applicable here, is used: "It was clearly the intention of Congress, in enacting the provision as to bond [referring to the bond provided for by section 34, supra], to give an innocent party the absolute right to recover the use of his property on complying with that provision."

In the instant case appellant admits, the trial court found, and the decree declares "that the Title Guarantee & Trust Company, a corporation, appellant herein, after being fully advised of the unlawful use to which said premises were being put, * * * delayed unreasonably to take action to prevent the continuance and repetition of the said unlawful acts." It is therefore quite clear that the trial court did not abuse its discretion in ordering the premises closed for a year. It was the logical thing to do; and, having so decreed, it further proposed to appellant, in the so-called option, that it might reopen its premises for a legitimate specified business. Here was a gratuitous concession to appellant, of which it now ungratefully complains.

This being an appeal in an equity suit, the whole case is before us, and upon due consideration we feel constrained to decide it upon its merits.

The decree is therefore modified by striking therefrom the following language:

"The option, however, is given to said Title Guarantee and Trust Company, if it consents to be bound by the restriction now stated, to have the possession of said premises returned to it upon giving bond in the sum of one thousand dollars ($1,000) as provided in the National Prohibition Act of October 28, 1919, to the effect that any tenant or lessee to whom the said respondent, Title Guarantee and Trust Company, may rent the said premises within the year next succeeding the date of this decree, shall not violate the provisions of the National Prohibition Act or of any other state or federal law relating to intoxicating liquors, such premises may be reopened and used for the purpose of a legitimate business, not including that of a restaurant, cafe or any business where food, drinks or beverages of any kind are sold or dispensed.

"That upon the furnishing of said bond, which shall contain the provisions above mentioned, the closure sign heretofore ordered to be placed on said premises may be removed."

The decree as modified is affirmed.