## SEIPEL v. EQUITABLE LIFE INS. CO. OF IOWA.

### No. 4601.

Circuit Court of Appeals, Seventh Circuit.

June 22, 1932.

Sherman Minton, John H. Weathers, and Evan B. Stotsenburg, all of New Albany, Ind., for appellant.

William Marshall Bullitt, Leo T. Wolford, and R. Lee Blackwell, all of Louisville, Ky. (Bruce & Bullitt, of Louisville, Ky., and Jewett & Bulleit, of New Albany, Ind., of counsel), for appellee.

Before ALSCHULER and SPARKS, Circuit Judges, and WILKERSON, District Judge.

ALSCHULER, Circuit Judge.

Appellant, as beneficiary, sought recovery under the "Double Indemnity" provision of a life insurance policy issued to her husband, whereby the insurer agreed to pay double the face of the policy in case "the death of the insured resulted * * * independently of all other causes, from bodily injuries effected solely through external, violent and accidental means."

At the close of the evidence for appellant the court directed a verdict for appellee and gave judgment accordingly, from which this appeal is prosecuted.

Seipel, an apparently strong and healthy young man, had for five years worked in a garage. He was engaged, with one Johnson, in placing in position on a motorbus a disc wheel weighing from 150 to 175 pounds. He on one side and Johnson on the other had lifted the wheel the necessary three inches from the floor, and were in the act of setting it upon the drum of the axle so that the six holes in the disc of the wheel would engage the six studs projecting outward from the drum, when suddenly Seipel let go of the wheel and clapped his hands on his abdomen with a cry of pain, saying he felt something tear within, and on opening his shirt a lump was found sticking out at the navel. Shortly afterwards, upon advice of his physician,

he was operated for an umbilical hernia and died from resultant post-operative pneumonia.

The sole question is: Was there substantial evidence tending to indicate that the hernia which resulted in his death was caused through external, violent, and accidental means?

If the means which alone caused the hernia were means which Seipel himself intentionally invoked and employed, then the means were not accidental, however unintended and unexpected the result. In other words, if Seipel intentionally participated in lifting this wheel into position, and while so lifting or holding it the hernia occurred without the intervention of outside and accidental means causing it, his injury was not caused in such manner as to raise liability for the double indemnity. Lyon v. Travelers' Protective Ass'n, 25 F.(2d) 596 (C. C. A. 4); Baldwin v. N. Am. Acc. Ins. Co., 22 F.(2d) 111 (C. C. A. 5); Carswell v. Ry. Mail Ass'n, 8 F.(2d) 612 (C. C. A. 5); Maryland Casualty Co. v. Spitz, 246 F. 817, L. R. A. 1918C, 1191 (C. C. A. 3); Shanberg v. Fid. & Cas. Co., 158 F. 1, 19 L. R. A. (N. S.) 1206 (C. C. A. 8).

Appellant does not controvert this proposition, but contends that the accidental slipping or dropping of the wheel out of Seipel's hands was the external, violent, and accidental means whereby the hernia was caused. If there was substantial evidence tending to show this, it may be conceded that the court should not have directed the verdict. Johnson's evidence is alone relied upon to establish this fact. His brief testimony does not, in our judgment, tend to indicate that the dropping of the wheel caused the hernia.

It is evident that Johnson attempted to fix a relation of succession between the dropping of the wheel and Seipel's outcry of pain, in the evident thought that, if the falling of the wheel preceded the cry, it might tend to show that the injury was thereby caused. But his evidence does not show even this fact—in itself far from controlling. We gather from his testimony that his best recollection is that the falling of the wheel and the exclamation occurred about the same time, and, if this is so, then even the asserted order of succession, which is the only fact relied upon, fails of proof.

It appears they were working on the dry cement floor of the garage, evidently bending over, lifting this wheel the necessary three inches and manipulating it so that the six holes in the disc should register with the six studs projecting through the drum. Although both of them were from long practice used to doing such work, it is evident that the six holes did not immediately come into register, and it required some manipulation to bring them into exact position. Johnson testified that one of the holes had caught on one of the lugs. The wheel could not slide onto the drum unless all the holes were in proper place opposite the lugs. It is not certain from Johnson's testimony that the wheel went down to the floor. There is some indication that it hung on one of the lugs after Seipel let go of it. In any event, it does not appear that the wheel fell over. Johnson evidently kept hold of his side of it, and there is nothing to indicate that the wheel came in contact with Seipel.

The natural conclusion from this evidence is that Seipel, while bending over, holding this heavy wheel and helping to manipulate it into position, underwent a strain which suddenly caused the hernia, and the sharp pain incident thereto brought forth his cry of distress and his simultaneous release of his hold on the wheel.

That he had never before sustained a hernia, although frequently doing such work, does not tend to raise any inference against its occurrence this time without the interposition of external, violent, and accidental means. We are of opinion that the evidence falls short of sustaining appellant's burden of showing that means other than those which deceased intentionally employed were the efficient cause of his injury.

The decision of this court in McCormack v. Illinois Commercial Men's Ass'n (C. C. A.) 159 F. 114, which is cited for appellant with apparent confidence as indicating the impropriety of a directed verdict in such a case, is not upon its facts applicable here. The question there was whether the death of the deceased was occasioned by a stroke of apoplexy, causing him to fall from his moving buggy and strike his head upon the ground, or whether the fall and the resulting death were caused through a buggy wheel striking an obstruction in the road, throwing him out of the buggy to the ground. The court merely held there was sufficient evidence sustaining the latter theory to have required that the case be submitted to the jury; whereas in this case there is, in our judgment, substantially no evidence to show that the injury and death were caused by external, violent, and accidental means.

The judgment of the District Court is affirmed.